Whaley, Chief Justice,
delivered the opinion of the court:
The plaintiff entered into a contract with the defendant on March 16, 1932, for a consideration of $3,127,213, whereby the plaintiff undertook to furnish all labor and materials, and perform all work required for the construction (except foundations and elevators) of the Post Office, *393 Court House and Custom House at Detroit, Michigan, including sidewalks and curbs about the building, in accordance with specifications, schedules, and drawings, enumerated, the work to be completed within 600 calendar days after the date of the receipt of notice to proceed. Notice to proceed was given the plaintiff on April 5, 1932, which fixed the time of completion on or before November 26,' 1933. Defendant assumed control of the building and began operating it on April 23, 1934, although the building was not finally completed until June 7, 1934. The defendant extended the time for completion for 193 days owing to the delays occasioned by the defendant and beyond the control of the contractor. No liquidated damages for delay were assessed against the contractor.
This suit is for damages occasioned plaintiff due to delays caused by the defendant.
The building contemplated under the contract was to occupy an entire square of the city of Detroit and was to be occupied not only by the Post Office but by the Court House, Custom House, and other agencies of the Government. It was to be a ten-story building and have a connecting tunnel to the Federal Eeserve Bank Building across the street.
Plaintiff is a competent engineering contracting company, having built many large Government buildings, and we have found from the record that no delays were occasioned by it.
This whole case is a factual one and involves no question of law. The facts, as found by the commissioner, have been adopted by the Court, after a careful perusal of the evidence, which overwhelmingly substantiates the findings of fact made by him. It is apparent that, through the unwarranted interferences and delays by the Government, the contractor was so interrupted in the orderly performance of the work and the following of the progress schedule as laid down by it at the beginning of the work, that approximately 200 days more than the allotted time in the contract for the completion of the work were necessary in order to finally complete the contract.
*394 Although the contract provided for changes under section 3, this section must be interpreted as meaning that they were reasonable changes and that allowances were to be made accordingly, in time and money.
In several instances there were change orders which allowed for an extension of time. These are not claimed and therefore do not enter into our consideration of the case. Under the terms of the contract the defendant had a right to make them.
There were other changes which were necessary because of defects in the plans and specifications occasioned by the neglect of the architect.
There were changes due to the failure of the Government to provide articles which were called for under the contract and to provide models, especially the models for the stone work. This stone work was to be in place at the early part of the contract. It was not finished until many months afterwards, thereby causing the building to be open during the winter months, when it would have been closed had the models been provided in time. This caused the contractor much expense and delay.
The findings show that in 26 different instances severally and conjunctively the plaintiff was delayed and, as a consequence, suffered damages. Many of these delays ran concurrently ; some of them were of such a serious nature and required such radical changes that the contractor was ordered to stop work until the changes could be decided on, and in many instances, after long delays, the contractor was told to proceed according to the original plans or according to the corrected plans. This applies to the changes contemplated in the plans of the sixth, seventh, and eighth floors.
The stoppage of work on the sixth, seventh, and eighth floors necessarily retarded and delayed the work on the two floors above the eighth floor. The plumbing on these lower floors had to be connected before the floors above could have the plumbing work installed.
We do not think it necessary to go into each item of delay and damage suffered. The facts, as found, plainly *395 show the nature of the delays and the extent, as admitted by the defendant in the extension of time granted and the nonimposition of liquidated damages.
During all these delays the plaintiff had to keep its force on the job or shift it from place to place, necessitating loss of time and efficiency.
The entire period of the delays was due to action or inaction on the part of the Government, unauthorized under the terms of the contract, and, therefore, defendant is responsible for the damages suffered by the plaintiff.
It was necessary for the plaintiff to keep fire, tornado, riot, and commotion insurance during the entire period of the extension as well as liability insurance, amounting to $4,080.54 and $570.83, respectively. In addition plaintiff had to expend $11,416.60 for job overhead; $17,375.75 for office overhead; $1,242.39 for electricity and temporary lighting; and $3,034.30 for equipment rentals, making a total of $37,720.41. This amount represents only the cost to plaintiff for delays after taking into consideration and deducting the increased amounts and extensions of time allowed by the change orders. Plaintiff is entitled to recover on these items.
Under the terms of the contract the building was to be completed November 26, 1933, but, owing to the delays occasioned by the defendant, it was not completed until the following summer. It was therefore necessary for the plaintiff to furnish heat for the building from November 26, 1933, until the building was taken over by the Government in April 1934. Plaintiff would not have had to furnish heat for the building during this period, had it not been delayed by the action of the defendant, and, therefore, plaintiff is entitled to recover the cost of heating the building in the sum of $19,061.47.
A further claim is made by plaintiff for its subcontractor for lathing and plastering. There is no question that the subcontractor was delayed by reason of the action of the defendant but there is no way of establishing what the damages were. Plaintiff has attempted to prove this claim by showing the difference between the contract price between *396 it and the subcontractor and tbe cost to the subcontractor. This is insufficient and is an unsatisfactory method of proof, and, therefore, has to be denied for failure of proof.
Defendant attempts to excuse the delays occasioned by the Government under the provisions of section 320 of the Economy Act of June 30, 1932 (47 Stat. 382, 412).
The contract in this case was entered into three months before the enactment of the Economy Act and the authorization was made two years before. No changes or additions were made which were not essential for the completion of the project, as originally planned, and there is nothing in the act which provided for unreasonable and unnecessary delays in the consideration of any change.
The act must be read in the light of reasonability and not arbitrariness or neglect. The act has no application in this case.
Plaintiff is entitled to recover the sum of $56,781.88.
It is so ordered.
MaddeN, Judge; Jokes, Judge; Whitaker, Judge; and LittletoN, Judge, concur.